IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA**,

Plaintiff,

v.

**CARLOS LOPEZ-SOTO**,

Defendant.

Crim. No. 14-415/14-637(DRD)

## OPINION AND ORDER

On June 2, 2014, Defendant Carlos Lopez-Soto ("Defendant") was indicted and charged with one count of interference with commerce by robbery, in violation of 18 U.S.C. §1951(a); one count of possession of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §924(c)(1)(A)(ii); and two counts of being a convicted felon in possession of a firearm and/or ammunition, in violation of 18 U.S.C. §922(g)(1) and 924(a)(2). *See* 14-cr-415, Docket No. 20. On October 22, 2014, Defendant was indicted in a separate case, 14-cr-637 (GAG). Defendant was charged with one count of conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), in violation of 18 U.S.C. §1962(c); two counts of interference with commerce by robbery, in violation of 18 U.S.C. §1951(a); one count of possession of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §924(c)(1)(A)(ii); and one count of being a convicted felon in possession of a firearm and/or ammunition, in violation of 18 U.S.C. §922(g)(1) and 924(a)(2). *See* 14-cr-637, Docket No. 3.[1]

On December 19, 2019, a jury returned verdicts of culpability against Defendant on Counts One, Two, Three, and Four of criminal case No. 14-415 and Counts One, Fourteen, Fifteen, Sixteen, and Seventeen of criminal case No. 14-637. *See* 14-cr-415, Docket No. 433. Pending before the Court is Defendant's *pro se*

---

[1] Criminal cases 14-415 (DRD) and 14-637 (GAG) were consolidated on February 24, 2016. *See* 14-cr-415, Docket No. 221.

1

*Motion for Acquittal* pursuant to Federal Rule of Criminal Procedure 29. *See* Docket No. 442; *see also* Fed. R. Civ. P. 29. For the reasons stated below, the Court finds a reasonable jury could have found Defendant guilty of all charges against him and Defendant's *Motion for Acquittal* is hereby **DENIED**.

## I. RELEVANT FACTUAL BACKGROUND[2]

Between December 23, 2013 and June 4, 2014, Defendant was part of a group of men who committed several armed robberies in Puerto Rico. The group consisted of co-Defendants Roberto Garcia-Santiago ("Piri"), Luis Ruiz-Santiago ("Wicho"), Juvencio Correa-Morales ("Juve"), Jesus Ramirez-Cotto ("Coco Conteo"), and Defendant Carlos Lopez-Soto, also known as "Chemito." The men would hold-up different type of establishments, such as retail stores, bars, and fruit and vegetable vendors, often while armed, and divide the proceeds or stolen merchandise equally among the participants.

On May 4, 2014, Defendant and Piri were driving in Defendant's burgundy Dodge Durango when they stopped by a fruit and vegetable vendor on the side of a highway in Canovanas, Puerto Rico. *See* Exhibit 3 (photo of fruit stand). Defendant, armed with a firearm, exited the vehicle, and robbed the vendor at gunpoint. During a struggle with the vendor, Defendant's weapon discharged and Garcia-Santiago disembarked from the Dodge Durango and assisted Defendant in subduing the vendor. Ultimately, the men stole between $50 and $60 and fled the scene. Upon fleeing the scene of the aforementioned robbery, Defendant and Piri proceeded to rob a second fruit and vegetable vendor on the same highway. *See* Exhibit 4 (photo of vendor stand). This time, Piri announced the robbery and brandished the firearm. Defendant held a knife. The two men stole the vendor's money as well as bags of bananas and plantains.

On May 17, 2014, Defendant, Piri, and Wicho drove to Rio Grande, Puerto Rico in Defendant's Dodge Durango. The three men arrived at Kalex Communication and Piri entered to scout the inside of the

---

[2] The Court recites the facts "in the light most favorable to the jury's verdict." *United States v. Santos-Soto*, 799 F.3d 49, 57 (1st Cir. 2015). For purposes of clarity, the Court will only recite the facts relevant to Defendant Carlos Lopez-Soto and the robberies in which he participated. However, the group committed several additional robberies around Puerto Rico. *See* Docket No. 412, pages 93-97 (testimony of Luis Ruiz-Santiago); *see also* Docket No. 417, pages 12-17 (testimony of Roberto Garcia-Santiago).

shop. Piri exited the store, changed clothes, and reentered the store, accompanied by Defendant, who had a knife. The two men announced the robbery, subdued the employees, and fled the scene with bags of cellphones, chargers, covers, and other items of value. *See* Exhibit 6 (video of robbery).

On May 23, 2014, Defendant and Piri were in Defendants' Dodge Durango searching for a store to hold-up. The men arrived at Puerto Rico Cellular Zone, Inc. in Arecibo, Puerto Rico and exited the vehicle. Both men entered the store and Defendant, armed with a .38-caliber revolver, announced the hold-up. The men fled the scene of the robbery with a trash bag full of cell phones, chargers, and other items of value. *See* Exhibit 9 (video of robbery).

On June 3, 2014, Defendant and Piri were in Defendants' Dodge Durango driving around Lares, Puerto Rico. The men arrived at Wasabi Technology Group Corp., parked, and exited the vehicle. The two men agreed to have Piri announce the robbery and hold the .38-caliber revolver while they robbed the store. The men restrained the employees with wrist straps and fled the scene with cell phones, chargers, covers, and money. *See* Exhibit 11 (video of robbery). After the robbery, the two men drove to the home of Piri's mother in Lares and left the Dodge Durango there. The men then drove to Rio Piedras, Puerto Rico in Piri's mother's vehicle and split the stolen merchandise equally before parting ways.

On June 4, 2014, the two men and Defendant's wife boarded Piri's Honda Accord returned to Lares to retrieve Defendants' Dodge Durango. During the drive, the men decided to paint the Durango black in order to conceal the vehicle from detection. The two men arrived at the residence and painted the Durango black. However, the men failed to paint the roof of the car and the Durango was readily identifiable by police. Law enforcement officials detained them shortly thereafter.

## II. STANDARD OF REVIEW FOR MOTION FOR ACQUITTAL UNDER FED. R. CRIM. P. 29

Federal R. Crim. P. 29 provides that the Court, upon defendant's request and after the close of the government's case, must enter a judgment of acquittal on any offense for which the evidence is insufficient to sustain a conviction. "The [trial] tribunal must discern whether, after assaying all the evidence in the light

most flattering to the government, and taking all reasonable inferences in its favor, a rational fact finder could find, beyond a reasonable doubt, that the prosecution successfully proved the essential elements of the crime." *United States v. Hernandez*, 146 F.3d 30, 32 (1st Cir. 1998)(citing *United States v. O'Brien*, 14 F.3d 703, 706 (1st Cir. 1994)).

In analyzing a Rule 29 motion, "[v]iewing the evidence in the light most flattering to the jury's guilty verdict, [the Court must] assess whether a reasonable factfinder could have concluded that the defendant was guilty beyond a reasonable doubt." *United States v. Lipscomb*, 539 F.3d 32, 40 (1st Cir. 2008). Thus, "the jurisprudence of Rule 29 requires that a deciding court defer credibility determinations to the jury." *Hernández*, 146 F.3d at 32 (citing *O'Brien*, 14 F.3d at 706); *United States v. Walker*, 665 F.3d 212, 224 (1st Cir. 2011) ("we take the facts and all reasonable inferences therefrom in the light most agreeable to the jury's verdict."). Additionally, the Court "must be satisfied that 'the guilty verdict finds support in a plausible rendition of the record.'" *United States v. Pelletier*, 666 F.3d 1, 12 (1st Cir. 2011)(quoting *United States v. Hatch*, 434 F.3d 1, 4 (1st Cir. 2006)). This standard is a "formidable" one, especially as "[t]he government need not present evidence that precludes every reasonable hypothesis inconsistent with guilt in order to sustain a conviction." *United States v. Loder*, 23 F.3d 586, 589-90 (1st Cir. 1994)(internal quotation marks omitted). Moreover, there is no "special premium on direct evidence." *O'Brien*, 14 F.3d at 706. "[T]he prosecution may satisfy its burden of proof by direct evidence, circumstantial evidence or any combination of the two." *Id.* (citing *United States v. Echevarri*, 982 F.2d 675, 677 (1st Cir. 1993)). Expressed in alternate fashion, "no premium is placed on direct as opposed to circumstantial evidence; both types of proof can adequately ground a conviction." *United States v. Ortiz*, 966 F.2d 707, 711 (1st Cir. 1992). As to evidentiary conflicts, "the trial judge must resolve all evidentiary conflicts and credibility questions in the prosecution's favor; and moreover, as among competing inferences, two or more of which are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt." *United States v. Olbres*, 61 F.3d 967, 970 (1st Cir. 1995); *see Hernández*, 146 F.3d at 32 (the trial court is required to "consider all the evidence, direct and

4

circumstantial, and resolve all evidentiary conflicts in favor of the verdict.")(citing *United States v. Carroll*, 105 F.3d 740, 742 (1st Cir. 1997)). On the other hand, "[t]he court must reject only those evidentiary interpretations that are unreasonable, unsupportable, or only speculative and must uphold any verdict that is supported by a plausible rendition of the record." *United States v. Ofray Campos*, 534 F.3d 1, 31-32 (1st Cir. 2008); *See also United States v. Cruz Laureano*, 404 F.3d 470, 480 (1st Cir. 2005) (urging the trial court "not to believe that no verdict other than a guilty verdict could sensibly be reached, but must only satisfy itself that the guilty verdict finds support in a plausible rendition of the record.")(citing *United States v. Gómez*, 255 F.3d 31, 35 (1st Cir. 2001)).

The First Circuit reiterated the above general standard in *United States v. Meléndez Rivas*, 566 F.3d 41 (1st Cir. 2009) (citing *Lipscomb*, 539 F.3d at 40), holding that the sufficiency standard for a Motion for Acquittal under Rule 29 required the district court to determine whether, viewing the evidence in the light most favorable to the government, a reasonable fact finder could have concluded that the defendant was guilty beyond a reasonable doubt. The Court, therefore, is not to discard compliance with the requirement of the standard of "guilty beyond a reasonable doubt." However, a defendant challenging his conviction for insufficiency of the evidence faces an "uphill battle." *United States v. Hernández*, 218 F.3d 58, 64 (1st Cir. 2000). Nevertheless, "despite the prosecution-friendly overtones of the standard of review, appellate oversight of sufficiency challenges is not an empty ritual." *United States v. De La Cruz Paulino*, 61 F.3d 986, 999 n.11 (1st Cir. 1995).

### III. ANALYSIS

Defendant takes issue with the sufficiency of the evidence presented by the government with regards to all charges presented at trial. When a defendant challenges his conviction on sufficiency of evidence grounds, the Court must consider all facts in the light most favorable to the prosecution and make all reasonable inferences in the government's favor. *United States v. Garcia-Carrasquillo*, 483 F.3d 124, 129-30 (1st Cir. 2007*); United States v. Boulerice*, 325 F.3d 75, 79 (1st Cir. 2003); *United States v. Walters*, 904,

F.2d 765, 770 (1st Cir. 1990); *United States v. Serrano*, 870 F.2d 1, 5 (1st Cir. 1989). The Court will uphold a guilty verdict if "a rational factfinder could conclude that the prosecution proved all elements of the crime beyond a reasonable doubt." *See Garcia-Carrasquillo*, 483 F.3d at 129-30. During its inquiry, the Court shall "neither weigh the credibility of the witnesses nor attempt to assess whether the prosecution succeeded in eliminating every possible theory consistent with the defendant's innocence." *United States v. Munoz-Franco*, 487 F.3d 25, 41 (1st Cir. 2007) (internal citations and quotations omitted).

### a. RICO Conspiracy

The jury found Defendant guilty of violating the Racketeer Influenced and Corrupt Organizations Act ("RICO") which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Here, Defendant is charged with violating Section 1962(d) of the Act—conspiracy to violate RICO. *See United States v. Shifman,* 124 F.3d 31, 35 (1st Cir.1997) (citation and alterations omitted)("The major difference between a violation of § 1962(c) itself and a violation of § 1962(d) based on § 1962(c) is the additional required element that the defendant knowingly joined a conspiracy to violate § 1962(c)"). Therefore, the Court must find that the government submitted sufficient evidence at trial whereupon a reasonable juror can find "(1) the existence of an enterprise affecting interstate [or foreign] commerce, (2) that the defendant knowingly joined the conspiracy to participate in the conduct of the affairs of the enterprise, (3) that the defendant participated in the conduct of the affairs of the enterprise, and (4) that the defendant did so through a pattern of racketeering activity by agreeing to commit, or in fact committing, two or more predicate offenses." *United States v. Ramirez-Rivera*, 800 F.3d 1, 18 (1st Cir. 2015)(internal citations omitted).

i. <u>Enterprise Affecting Interstate Commerce[3]</u>

For RICO purposes, an enterprise "is not merely a related assortment of criminal activities." *United States v. Connolly*, 341 F.3d 16, 25 (1st Cir. 2003). However, an enterprise "need only be a group of persons associated together for a common purpose of engaging in a criminal course of conduct." *United States v. Nascimento*, 491 F.3d 25, 32 (1st Cir. 2007)(quoting *Connolly,* 341 F.3d at 28). The enterprise must also have "some goal or purpose more pervasive and more enduring than the instant gratification that can accrue from the successful completion of each particular criminal act." *Id*.

Roberto Garcia-Santiago, known as "Piri," testified that Defendant was part of a group of men who would find businesses to rob. The group operated between December 23, 2013 and June 4, 2014, when Defendant and Garcia-Santiago were arrested. *See* Docket No. 400, pages 11-12. In that time, Garcia-Santiago testified that the group committed eight (8) total Hobbs Act robberies, in addition to several additional robberies of smaller businesses. Each one of those robberies was conducted by at least two of the group's members—Defendant, Piri, Wicho, Juve, and Coco Conteo. Garcia-Santiago testified that the men would split the proceeds of each particular robbery equally between the participants. *See id*. at pages 14-15. Garcia-Santiago's cousin, Luis Ruiz-Santiago, corroborated Garcia-Santiago's testimony with his own account of the group's activities. *See, e.g.,* Docket No. 412, pages 77-85 and 91-97. Altogether, the testimony at trial was sufficient to establish the existence of the "enterprise" whose sole purpose was robbing stores for financial gain. *See Nascimento* at 32.

ii. <u>Knowing and Voluntary Joinder and Participation in the Enterprise's Acts</u>

"The RICO net is woven tightly to trap even the smallest fish, those peripherally involved with the enterprise." *United States v. Brandao*, 539 F.3d 44, 51–52 (1st Cir. 2008)(internal citations omitted). For

---

[3] The "interstate commerce" aspect of the enterprise will be discussed in later sections. However, the enterprise's effect on interstate commerce was established by testimony that the men would rob stores selling cellular phones, which traveled in interstate commerce, often while brandishing weapons that also traveled in interstate commerce.

Defendant to satisfy this element, he "need only be aware of at least the general existence of the enterprise named in the indictment and know about its related activities." *United States v. Marino*, 277 F.3d 11, 33 (1st Cir. 2002)(internal citations and marks omitted). Additionally, for purposes of this element, it is sufficient to have found Defendant "played some part in the operation or management of the enterprise." *United States v. Cianci*, 378 F.3d 71, 95 (1st Cir. 2004).

Roberto Garcia-Santiago testified that Defendant participated in five separate robberies with other members of the group. *See* Docket No. 400, pages 20-27 (May 4, 2014 robbery), 29-44 (May 17, 2014 robbery), 44-55 (May 23, 2014 robbery), and 55-68 (June 3, 2014 robbery). Luis Ruiz-Santiago, who participated in one of the robberies with Defendant, also testified that Defendant was an active participant in at least one robbery. *See* Docket No. 412, pages 92-93 (May 17, 2014 robbery). Moreover, both men testified that Defendant would provide his personal vehicle, a burgundy Dodge Durango, for use in the five robberies in which he participated. *See* Docket No. 400, pages 21, 27, 29, 44, and 55; *see also* Docket No. 412, pages 78 and 93. Defendant's participation in five overt acts of the conspiracy, as well as the group's use of Defendant's vehicle during these acts, is sufficient to satisfy the second and third elements of a RICO Conspiracy—knowing and voluntary joinder and participation in the acts of the enterprise. *See Marino*, 277 F.3d at 27 ("A sufficient nexus or relationship exists between the racketeering acts and the enterprise if the defendant was able to commit the predicate acts by means of, by consequence of, by reason of, by the agency of, or by the instrumentality of his association with the enterprise.").

###  iii.  Pattern of Racketeering

To satisfy the "pattern" element for a RICO conspiracy, "the statute requires that "a defendant agreed with one or more others that two predicate offenses be committed." *United States v. Ramirez-Rivera*, 800 F.3d 1, 20 (1st Cir. 2015); *see also United States v. Shifman*, 124 F.3d 31, 36 (1st Cir. 1997)("In order to have engaged in a 'pattern' of racketeering activity, a defendant must have committed at least two

8

racketeering acts within ten years of one another."). The acts must be "related and amount to or pose a threat of continued criminal activity." *Ramirez-Rivera* at 20.

As discussed above, Defendant participated in five overt acts in furtherance of the RICO conspiracy. Moreover, these acts posed a threat of continued activity as the men would rob stores at random until the date when Defendant and Garcia-Santiago were arrested. *See, e.g., H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989).

### iv. Conclusion

The Court finds that the United States satisfied all elements necessary to prove the existence of a RICO Conspiracy. Accordingly, the Court finds the United States introduced sufficient evidence upon which a reasonable juror could have found Defendant guilty of participating in a RICO Conspiracy between November 2013 and June 2014. Defendant's Rule 29 is therefore **DENIED** as to Count One of criminal case no. 14-637.

### b. *Interference with Commerce by Robbery*

Defendant was found guilty three counts of interference with commerce by robbery, in violation of The Hobbs Act, 18 U.S.C. §1951(a). The Hobbs Act provides that "[w]hoever *in any way or degree obstructs, delays, or affects commerce* or the movement of any article or commodity in commerce, by robbery or extortion ... shall be fined ... or imprisoned...." *United States v. Cabrera-Rivera*, 583 F.3d 26, 32 (1st Cir. 2009)(quoting 18 U.S.C. § 1951(a))(emphasis in the original). A robbery's effect on interstate commerce may be demonstrated by showing "(1) the business engaged in interstate commerce, and (2) that the robbery either depleted the assets of the business ... or resulted in the business's temporary or permanent closure." *United States v. Rodriguez-Casiano,* 425 F.3d 12, 15 (1st Cir. 2005); *see also United States v. Cruz-Rivera,* 357 F.3d 10, 14 (1st Cir.2004).

i. <u>May 17, 2014</u>

Defendant was found guilty of participating in the May 17, 2014 robbery of Kalex Communication in Rio Grande, Puerto Rico. Luis Ruiz-Santiago and Roberto Garcia-Santiago, both of whom participated with Defendant in this robbery, testified that Defendant entered the store, armed with a knife, and announced the robbery. *See* Docket No. 400, pages 29-31; *see also* Docket No. 412, pages 92-95. Myriselis Monge-Lopez, who was in the store at the time, testified regarding the robbery and how Defendant had placed her in fear for her life. *See* Docket No. 412, pages 3-10. Most importantly, Exhibit 6, a video of the robbery, corroborated the witnesses' testimony regarding Defendant's participation in the robbery.

Regarding the robbery's effect on interstate commerce, Alex Medina-Melendez, an employee of the store, testified that the store sold cellphones that it bought outside of Puerto Rico. Docket No. 412, pages 11-18. Medina-Melendez also testified at length about how the store was forced to close temporarily due to the losses suffered because of the robbery. *See id*.

ii. <u>May 23, 2014</u>

Defendant was found guilty of participating in the May 23, 2014 robbery of Cellular Zone, Inc. in Arecibo, Puerto Rico. Garcia-Santiago testified that Defendant brandished a gun during when he entered the store and announced a robbery. See Docket No. 400, pages 44-55. Sugeily Vargas-Aguirres, a victim of the robbery, testified that Defendant violently threatened her with a gun as he was gathering the stolen goods from the store. See Docket No 412, pages 18-26. Exhibit 9, a video of the robbery, corroborated the witnesses' testimony regarding Defendants' involvement in the robbery and his brandishing of a firearm.

Regarding the robbery's effect on interstate commerce, Jose Cruz-Rivera, the owner of the store, testified that the store sold cellphones that it bought outside of Puerto Rico. Docket No. 412, pages 27-36. Cruz-Rivera also testified at length about how the store was forced to close temporarily because of the losses suffered. *See id*.

### iii. June 3, 2014

Defendant was also found guilty of participating in the June 3, 2014 robbery of Wasabi Technology Group Corp. in Lares, Puerto Rico. Garcia-Santiago testified that he had decided, along with Defendant, to enter the store and announce the robbery while brandishing a weapon. Garcia-Santiago testified regarding the robbery and how Defendant participated in collecting the stolen items from the store. See Docket No. 400, pages 55-66. Madeline Duran-Jimenez, one of the victims, testified that Defendant and Garcia-Santiago made her fear for life during the armed robbery. See Docket No. 413, pages 65-75. Exhibit 11, a video of the robbery, corroborated the witnesses' testimony.

Regarding the robbery's effect on interstate commerce, Angel Hernandez-Boneta, the owner of the store, testified that the store sold cellphones that it bought outside of Puerto Rico. Docket No. 413, pages 76-84. Hernandez-Boneta also testified at length about how the store had to close temporarily due to the losses from the robbery. *See id*.

### iv. Conclusion

The United States provided sufficient evidence to the jury that Defendant used force and intimidation to commit three separate Hobbs Act robberies. Furthermore, these robberies targeted businesses engaged in interstate commerce. Accordingly, Defendant's Rule 29 Motion is **DENIED** as to Counts Fourteen and Fifteen of criminal case no. 14-637 as well as Count One of criminal case no. 14-415.

### c. *Firearms Offenses*[4]

Defendant also stands charged five firearm offenses for possessing weapons or ammunition on three separate dates—May 23, 2014, June 3, 2014, and June 4, 2014. "Knowing possession of a firearm" may be

---

[4] A violation of the Hobbs Act is a crime of violence for purposes of this section. *See, e.g., United States v. Rodríguez–Casiano*, 425 F.3d 12, 13 (1st Cir.2005). Moreover, the Court took judicial notice of Defendant's prior conviction and provided a jury instruction to those effects. *See* Docket No. 372; *see also* Docket No. 432, page 12. Finally, firearms are not manufactured in Puerto Rico and any gun or ammunition used on the island traveled in interstate commerce. See Docket No. 436, page 60 (testimony of ATF Agent Burgos). Therefore, the Court need only be satisfied that Defendant in fact aided and abetted in the carrying of a firearm on May 23, 2014 and June 3, 2014 and that Defendant was in possession of ammunition on June 4, 2014.

proven through either actual or constructive possession. *United States v. Guzman-Montanez*, 756 F.3d 1, 8–9 (1st Cir. 2014)(quoting *United States v. Liranzo,* 385 F.3d 66, 69 (1st Cir.2004)). Actual possession is the state of immediate, hands-on physical possession. Id. (citing *United States v. Zavala Maldonado,* 23 F.3d 4, 6 (1st Cir.1994)). Constructive possession can be established by proving that the exerted dominion and control over the gun. *United States v. DeCologero,* 530 F.3d 36, 67 (1st Cir.2008). "Although § 924(c) requires proof that the gun is real, the government's proof need not 'reach a level of scientific certainty.'" *United States v. Cruz-Diaz*, 550 F.3d 169, 172–73 (1st Cir. 2008)(quoting *United States v. Roberson,* 459 F.3d 39, 47 (1st Cir.2006)). Lay testimony describing the weapon "can be sufficient to prove that the defendant used a real gun." *Id.*

i. <u>May 23, 2014</u>

The jury found Defendant guilty of aiding and abetting in carrying a firearm during and in relation to a crime of violence, 18 U.S.C. §924(c), and aiding and abetting in carrying a firearm by a convicted felon, 18 U.S.C. §922(g)(1), on May 23, 2014 during the robbery of Cellular Zone, Inc. in Arecibo, Puerto Rico. As discussed above, Garcia-Santiago and Sugeily Vargas-Aguirres testified that Defendant brandished a gun during the aforementioned robbery. Video and photographic evidence was also introduced to corroborate the witnesses' testimony.

ii. <u>June 3, 2014</u>

Defendant was also found guilty of aiding and abetting in carrying a firearm during and in relation to a crime of violence, 18 U.S.C. §924(c), on June 3, 2014 during the robbery of Wasabi Technology Group, Corp. in Lares, Puerto Rico. Similar to the robbery of Cellular Zone, Garcia-Santiago and the victims of the robberies testified that Garcia-Santiago brandished a weapon during this robbery and that Defendant had advanced knowledge that Garcia-Santiago would do so. Video exhibits and still photographs of the robbery were introduced and they served to corroborate the witnesses' testimony that Defendant, in fact, aided and abetted in the possession of a firearm on that date.

### iii. June 4, 2014

Finally, Defendant was found guilty of possession of ammunition by a convicted felon, 18 U.S.C. §922(g)(1), on June 4, 2014 at the time of his arrest. This charge is upheld based on the testimony of ATF Special Agent Burgos, who seized the ammunition from Defendant upon his arrest. *See* Docket No. 408, pages 46-47.

### iv. Conclusion

Based on the overwhelming testimonial and video evidence presented at trial, the Court finds that a reasonable juror certainly could find Defendant guilty of all five firearm offenses charged. The evidence was robust in that Defendant brandished a weapon on May 23, 2014; aided and abetted in the brandishing of a firearm on June 3, 2014; and had ammunition in his possession on June 4, 2014. Consequently, Defendnat's Rule 29 motion is hereby **DENIED** as to Counts Two, Three, and Four of criminal case no. 14-415 and Counts Sixteen and Seventeen of criminal case no. 14-637.

## III. CONCLUSION

For the reasons stated above, the Court finds that sufficient evidence was presented to uphold the jury verdicts rendered on all nine counts charged against Defendant Carlos Lopez-Soto. Accordingly, Defendant's *Motion for Acquittal* (Docket No. 442) is hereby **DENIED**. Sentencing will proceed as scheduled.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 11th day of May, 2017.

/s/ Daniel R. Dominguez
DANIEL R. DOMINGUEZ
U.S. DISTRICT JUDGE